# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | |
|---|---|
| ETHAN RADVANSKY, on behalf of himself and those similarly situated, | Case No. 3:23-cv-00214-LMM |
| Plaintiff, | |
| v. | |
| KENDO HOLDINGS, INC., d/b/a Fenty Beauty, | |
| Defendant. | |

## DEFENDANT KENDO HOLDINGS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

   A.   Plaintiff's Allegations ................................................................................ 3

   B.   Procedural History ..................................................................................... 4

III.  LEGAL STANDARD ........................................................................................ 6

IV.   ARGUMENT AND CITATION OF AUTHORITIES ..................................... 7

   A.   Plaintiff's Claim Hinges on TCPA Provisions that Apply to "Residential" but not "Cellular" Telephone Calls or Text Messages .................................................. 7

   B.   Principles of Statutory Construction Confirm Section 227(c) Does Not Apply to Cell Phone Users ...................................................................... 9

   C.   The 2003 FCC Order Is Invalid and Entitled to No Deference ........................ 17

      1.   The 2003 FCC Order Impermissibly Expands Section 227(c) ..................... 17

      2.   The FCC Lacks Authority to Create a Private Right of Action for Cell Phone Users ................................................................................ 20

IV.   CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)..................................................................................27, 28

*Barr v. Am. Ass'n of Political Consultants*,
591 U.S. 610 (2020)........................................................................................18

*Breslow v. Wells Fargo Bank, N.A.*,
755 F.3d 1265 (11th Cir. 2014) .....................................................................17

*Breslow v. Wells Fargo Bank, N.A.*,
857 F. Supp. 2d 1316 (S.D. Fla. 2012) ..........................................................17

*Carbone v. Cable News Network, Inc.*,
910 F.3d 1345 (11th Cir. 2018) .....................................................................13

*Catalyst Pharms., Inc. v. Becerra*,
14 F.4th 1299 (11th Cir. 2021) ..........................................................18, 20, 21

*Cunningham v. Carribean Cruise Lines, Inc.*,
2016 WL 7494871 (S.D. Fla. Dec. 29, 2016)............................................17, 22

*ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*,
113 F.4th 1312 (11th Cir. 2024) .....................................................................20

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)......................................................................15, 16, 26, 29

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (3d Cir. 2013) ...........................................................................17

*Gaker v. Q3M Ins. Sols.*,
2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) .................................................22

*Glasser v. Hilton Grand Vacations Co., LLC*,
948 F.3d 1301 (11th Cir. 2020) .......................................................9, 17, 18, 25

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006)........................................................................................19

*Hylton v. United States AG*,
    992 F.3d 1154 (11th Cir. 2021) ...........................................................21

*Ins. Mktg. Coal. Ltd. v. FCC*,
    127 F.4th 303 (11th Cir. 2025) ............................................9, 23, 26, 28

*Jones v. Blackstone Med. Servs., LLC*,
    2025 WL 2042764 (C.D. Ill. July 21, 2025).......................................29

*Love v. Delta Air Lines*,
    310 F.3d 1347 (11th Cir. 2002) ...........................................................28

*McLaughlin Chiropractic Assoc., Inc., v. McKesson Corp.*,
    145 S. Ct. 2006 (June 20, 2025) ..................................................*passim*

*Morgan v. U.S. Xpress, Inc.*,
    2018 WL 3580775 (W.D. Va. July 25, 2018) ....................................22

*Morris v. Lincare, Inc.*,
    2023 WL 5336780 (M.D. Fla. Aug. 18, 2023).....................................17

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) .....................................................17, 24

*Parm v. Nat'l Bank of California, N.A.*,
    835 F.3d 1331 (11th Cir. 2016) ...........................................................20

*Patel v. Specialized Loan Servicing, LLC*,
    904 F.3d 1314 (11th Cir. 2018) ...........................................................14

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997).......................................................................15, 16

*Russello v. United States*,
    464 U.S. 16 (1983)...............................................................................19

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
    603 F. Supp. 3d 1334 (S.D. Fla. 2022)..............................9, 12, 22, 25

*United States v. Silva*,
    443 F.3d 795 (11th Cir. 2006) .............................................................16

*In re Wild*,
994 F.3d 1244 (11th Cir. 2021) (en banc) ..........................................................28

**Statutes**

28 U.S.C. § 2241 ...............................................................................................19

47 U.S.C. ..........................................................................................................10

47 U.S.C. § 227(b) .....................................................................................*passim*

47 U.S.C. § 227(b)(1) ........................................................................................26

47 U.S.C. § 227(b)(1)(A) ...................................................................................17

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................15, 17, 18, 24

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................16

47 U.S.C. § 227(b)(1)(B) ..................................................................16, 17, 24

47 U.S.C. § 227(b)(2)(B) ...................................................................................24

47 U.S.C. § 227(c) .....................................................................................*passim*

47 U.S.C. § 227(c)(1) ............................................................................14, 19, 24

47 U.S.C. § 227(c)(2) ............................................................................14, 19, 24

47 U.S.C. § 227(c)(3) ..........................................................................9, 14, 19, 24

47 U.S.C. § 227(c)(5).................................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(c).........................................................................18, 19, 24

47 C.F.R. § 64.1200(c)(2) ..........................................................................*passim*

47 C.F.R. § 64.1200(e)..........................................................................8, 18, 23, 25

Fed. R. Civ. P. 12(b)(6)......................................................................................13

Fed. R. Civ. P. 12(c)...............................................................................8, 10, 13

Fed. R. Civ. Proc. 23 ................................................................................................11

Local Rule 5.1(C)......................................................................................................32

## I.    INTRODUCTION

Plaintiff Ethan Radvansky ("Plaintiff") allegedly received text messages intended for someone else and seeks statutory damages of up to $1,500 per text under the Telephone Consumer Protection Act ("TCPA"), which ostensibly imposes liability for even mistaken calls. Plaintiff asserts a claim under section 227(c) of the TCPA for an alleged violation of the federal Do-Not-Call ("DNC") regulation, 47 C.F.R. § 64.1200(c)(2). The FCC extended the regulation in 2003 to proscribe telephone solicitations made to "wireless telephone numbers." 47 C.F.R. § 64.1200(e). Defendant Kendo Holdings, Inc. ("Defendant" or "Kendo") respectfully moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) because the private right of action under 47 U.S.C. § 227(c) applies only to "residential telephone subscribers," not cell phone users like Plaintiff, and the FCC exceeded its statutory authority in purporting to expand liability under the DNC provisions to encompass calls and text messages to cell phone numbers.

Kendo previously moved to dismiss the Complaint on this basis. *See* D.E. 16. While the Court concluded that "the FCC changed the definition of 'residential subscriber,'" and was "sympathetic" to Kendo's arguments that the FCC lacked congressional authority to do so, D.E. 28 at 12 & 14, it was unable to consider them under prior precedent that has since been abrogated by the U.S. Supreme Court. *See id*. at 8–9 & n.2; *see also McLaughlin Chiropractic Assoc., Inc., v. McKesson Corp.,*

1

145 S. Ct. 2006, 2013 (June 20, 2025) (holding that district courts "should interpret the TCPA under ordinary principles of statutory interpretation," and are not precluded by the Hobbs Act "from independently assessing whether an agency's interpretation of the relevant statute is correct").

Under *McLaughlin*, this Court can now consider Kendo's arguments and independently construe the statutory provisions at issue, which bar application of section 227(c) to cell phone users. As construed by one sister court: "[W]hen Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers. Consequently, the protections offered to numbers on the DNC Registry, *see* 47 C.F.R. § 64.1200(c)(2), would not apply to cellular telephone numbers, and Plaintiff's claim would be foreclosed." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.,* 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022). The Eleventh Circuit has consistently interpreted calls to "residential" phones under TCPA to mean calls to "land lines," not cell phones. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304 (11th Cir. 2020). The Eleventh Circuit has also consistently rejected FCC regulations purporting to "implement" the TCPA when "the FCC overstepped statutory boundaries." *See, e.g.*, *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 317 (11th Cir. 2025). Section 227(c) of the TCPA should not be construed any differently, as its

plain terms apply only to calls made to "residential" phones, not cellular phones.

Kendo's Motion should therefore be granted and the case dismissed.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff seeks to bring a putative class action over alleged text messages sent to his cell phone number which he claims he did not solicit but were "intended for someone other than" him. Compl. ¶¶ 11–21.[1] The Complaint alleges that "since March 2023," Plaintiff was "the regular and sole user of his cellular telephone number" ending in -1848 and that he registered that cell phone number with the National DNC Registry on April 18, 2023. *Id.* ¶¶ 11, 14, 15. Plaintiff asserts a single cause of action alleging that Kendo violated § 227(c) of the TCPA by sending "at least seventeen" text messages to Plaintiff "thirty-one or more days" after he registered his cell phone number with the DNC Registry. *Id.* ¶ 16. Plaintiff does not allege that these texts are ongoing, and the last alleged text shown in the Complaint is dated July 20, 2023. *Id.* ¶ 15. While Plaintiff asserts he "suffered actual harm," he alleges no facts to substantiate that claim. *Id.* ¶ 22. Yet like countless other TCPA cases,[2] Plaintiff seeks treble damages under 47 U.S.C. § 227(c)(5)(C) of at least

---

[1] Kendo uses a double opt-in process to verify consent prior to sending text messages. While Defendant maintains that Plaintiff's phone number opted in to receive such messages, it accepts as true the Complaint's well-pleaded facts solely for purposes of this motion under Fed. R. Civ. P. 12(c).

[2] Plaintiff has filed at least ten TCPA class actions. *See Radvansky v. Nip & Tuck*

$1,500 for each alleged violation and his attorneys seek fees under Fed. R. Civ. Proc. 23—substantial windfalls (and penalties) for what Plaintiff claims to be a wrong number case over alleged text messages that ceased months before he filed suit.

### B.    Procedural History

Kendo moved to dismiss the Complaint on January 10, 2024. D.E. 16. In its motion, Kendo argued that cell phone users like Plaintiff do not qualify as "residential telephone subscribers" under section 227(c) of the TCPA, which distinguishes between "residential" and "cellular" telephones. D.E. 16-1 at 2–16. At that time, the FCC's interpretation of the TCPA was deemed binding on this Court. D.E. 28 at 7 ("The Eleventh Circuit has established a strict view of district courts' power under the Hobbs Act" that "bar[s] district courts from so much as considering any argument . . . that an agency order misinterpreted the law, 'no matter how wrong the agency's interpretation might be.'") (citing *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019)). Not surprisingly, courts were divided on whether calls to cell phones were actionable under section 227(c), in large part

---

*Plastic Surgery, LLC*, No. 1:25-cv-03502 (N.D. Ga. June 23, 2025); *Radvansky v. Comfortwear Collections Int'l Inc.*, No. 1:25-cv-02810 (N.D. Ga. May 20, 2025); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-02811 (N.D. Ga. May 20, 2025); *Radvansky v. Destination XL Grp., Inc.*, No. 1:25-cv-02777 (N.D. Ga. May 19, 2025); *Radvansky v. Health Tech Acad., LLC*, No. 3:25-cv-00012 (N.D. Ga. Jan. 10, 2025); *Radvansky v. Bubolo Med., LLC*, No. 1:24-cv-04365 (N.D. Ga. Sept. 26, 2024); *Radvansky v. Embodied, Inc.*, No. 3:23-cv-00224 (N.D. Ga. Nov. 21, 2023); *Radvansky v. Maelys Cosmetics LTD.*, No. 3:23-cv-00202 (N.D. Ga. Oct. 18, 2023); *Radvansky v. Rayne Ventures, LLC*, No. 3:23-cv-00186 (N.D. Ga. Sept. 25, 2023).

because the FCC issued an order in 2003 purporting to bring cell phone calls within the ambit of section 227(c). *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003) (the "2003 FCC Order").

Until *McLaughlin*, district courts in the Eleventh Circuit were bound to follow the 2003 FCC Order despite observing that § 227(c) intentionally omits reference to cell phones. *See, e.g.*, *Turizo*, 603 F. Supp. 3d at 1342 ("Despite an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision, the Court must enforce the rules and regulations set forth by the FCC."). Consequently, this Court held that it was unable to reach Kendo's principal argument for dismissal because precedent dictated adherence to the 2003 FCC Order interpreting § 227(c) to include cell phone users, even though the Court was "sympathetic" to Kendo's position that "the 2003 FCC may violate separation of powers by going further than the authority Congress vested the FCC with." D.E. 28 at 12. "Because the Court [could] not 'refuse to enforce an FCC interpretation,' it must consider Radvansky's number to be a residential number." *Id.* at 9. The Court denied Kendo's motion to dismiss, holding that "[i]n its 2003 order, the FCC changed the definition of 'residential subscriber' throughout section 227 of the statute," and "[t]his alteration *expands* the private cause of action in section 227(c)," *id.* at 14 (underline added)–thus making clear that Plaintiff's claim rests entirely on

the FCC's *amendment* of the statute.

Kendo sought and obtained permission to appeal. D.E. 35. On October 3, 2024, Kendo petitioned the Eleventh Circuit to decide whether the Hobbs Act required district courts to treat as binding the FCC's interpretation of the TCPA. The next day, the Supreme Court granted certiorari to address the same question. *See* Order Granting Pet. (Oct. 4, 2024), *McLaughlin*, No. 23-1226. On March 26, 2025, the Court stayed proceedings pending the outcome of *McLaughlin*. D.E. 39.

On June 20, 2025, the Supreme Court held that "[t]he Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct." *McLaughlin*, 145 S. Ct. at 2013. That holding abrogates prior panel precedent which foreclosed review of the validity of FCC orders. Accordingly, this Court can now "interpret the term 'residential telephone'" based on how it is used in the statute, not how it was "changed" by the FCC. *See* D.E. 28 at 8, 14.

## III.    LEGAL STANDARD

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). "[D]ismissal is appropriate where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint. For this reason, a court may dismiss a complaint pursuant to Rule 12(b)(6) [or Rule

12(c)] on a dispositive issue of law." *Patel v. Specialized Loan Servicing, LLC*, 904

F.3d 1314, 1321 (11th Cir. 2018).

## IV.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    Plaintiff's Claim Hinges on TCPA Provisions that Apply to "Residential" but not "Cellular" Telephone Calls or Text Messages

Plaintiff seeks damages that are not afforded to him under the TCPA because

the legal remedy provided under the DNC provision expressly applies to "residential

telephone subscribers," not cell phone users. *See* 47 U.S.C. § 227(c). Section

227(c)(1) authorizes the creation of the DNC Registry "to protect *residential*

telephone subscribers' privacy rights," 47 U.S.C. § 227(c)(1)), by creating a database

of phone numbers of "*residential* subscribers who object to receiving telephone

solicitations," 47 U.S.C. § 227(c)(3) (emphases added). Section 227(c)(2) authorizes

the FCC to "prescribe regulations to implement methods and procedures for

protecting the privacy rights described in" § 227(c)(1) as it pertains to "residential

telephone subscribers" only. 47 U.S.C. § 227(c)(2). In addition, section 227(c)(5)

creates a private right of action for one "who has received more than one telephone

call within any 12-month period by or on behalf of the same entity in violation of

the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

Plaintiff contends that "[a] text message is a 'call' as defined by the TCPA,"

and bases his claim on 47 C.F.R. § 64.1200(c)(2), which provides that no one shall

initiate a telephone solicitation to a "*residential* telephone subscriber who has

registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2) (emphasis added); Compl. ¶¶ 54, 55, 58. But neither § 227(c), nor the regulation under § 64.1200(c)(2), apply to text messages sent to cell phone numbers. Instead, calls to *cellular* phones are governed by a different provision of the TCPA that restricts automated calls. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls made using an automatic telephone dialing system ("autodialer") or an artificial or prerecorded voice to phone numbers assigned to a "cellular telephone service").[3] Plaintiff therefore cannot bring suit under 47 U.S.C. § 227(c) for alleged texts sent to his cell phone because that provision, by its plain terms, applies to calls made to residential (not cellular) telephone subscribers only.

Moreover, Plaintiff's claim fails for the separate and independent reason that § 227(c) applies only to "calls" and not text messages. The TCPA does not define telephone "call" to include text messages. Instead, the FCC interpreted the statute as "encompass[ing] both voice calls and text calls to wireless numbers" on the basis of § 227(b)(1)(A)(iii) which restricts autodialed and prerecorded/artificial voice calls made to cell phone numbers. 2003 FCC Order at ¶ 165; *see also Ins. Mktg. Coal. Ltd.*, 127 F.4th at 307 n.2 (observing that "the statute on its face does not mention

---

[3] Plaintiff does not and cannot assert a claim under 47 U.S.C. § 227(b) following *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), holding "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator" (which plaintiff does not and cannot allege). *Id.* at 1170–72.

text messages," but by regulation via the 2003 FCC Order, the FCC "has interpreted the word 'call' to include text messages").[4] Post-*McLaughlin*, at least one court has held that "based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages." *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, __F. Supp. 3d__, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025). As the court explained: "Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages. . . . 'We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted['] . . . . Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Id.* at *4 (citations omitted) (dismissing complaint).

## B.    Principles of Statutory Construction Confirm Section 227(c) Does Not Apply to Cell Phone Users

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning" by referring "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997). The "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is

---

[4] *See also Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 60 Fed. Reg. 5098 (Jan. 26, 2024) (amending the regulation in § 64.1200(e) to include "text messages").

coherent and consistent.'" *Id.* at 340; *see also United States v. Silva*, 443 F.3d 795, 797–98 (11th Cir. 2006) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry."). Here, sections 227(c) and 64.1200(c) unambiguously apply to "residential telephone subscribers," not cell phone users.

The limited scope of § 227(c) is evidenced by both the statutory framework and text. The U.S. Supreme Court and the Eleventh Circuit have both ruled that the TCPA distinguishes between calls to "residential" and "cellular" telephones throughout the statute. The terms are not interchangeable. This is made obvious by the presence of separate provisions restricting robocalls to a "*cellular* telephone" in 47 U.S.C. § 227(b)(1)(A)(iii) and to a "*residential* telephone" in § 227(b)(1)(B). As explained by the Supreme Court in *Duguid*, the TCPA "separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones," making clear that the TCPA treats *residential* phone lines as distinct from *cellular* phone lines. 592 U.S. at 409 (citing 47 U.S.C. §§ 227(b)(1)(A) and (B); rejecting a "broad interpretation" of the TCPA that was contrary to its "narrow statutory design" that targeted only certain types of calls to cellular lines). The Eleventh Circuit has similarly concluded that exemptions for automated calls to residential phones do not apply to the same type of calls made to cell phones based on the statutory distinction between calls to residential phone lines and those to cellular numbers. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242,

1250 (11th Cir. 2014) (distinguishing calls made to a "residential telephone line" under 47 U.S.C. § 227(b)(1)(B) from calls made to a "cell-phone number," which concerned § 227(b)(1)(A)(iii)); *see also Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) (affirming district court ruling that explained "practical realities support a distinction between residential and cellular lines"). Accordingly, the Eleventh Circuit (as well as the Third Circuit) has construed *residential* phones under the TCPA to mean "land lines" and not cellular lines. *See Glasser*, 948 F.3d at 1034 (stating that the TCPA's "prohibition on using auto-dialers [in 47 U.S.C. § 227(b)(1)(A)] does not apply to residential land lines," citing § 227(b)(1)(B)); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (holding that exemptions "that apply exclusively to residential lines," construed as "land-lines," do not apply to calls made to cellular phones). The TCPA's distinction between residential and cellular phone lines has been recognized by other courts within this judicial circuit.[5]

---

[5] *See, e.g.*, *Morris v. Lincare, Inc.*, No. 8:22-cv-2048-CEH-AAS, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023) ("[C]ourts use 'home phone' and 'residential telephone' to refer to the TCPA's language 'residential telephone line.' While these terms are used by courts interchangeably, they are distinct from cell phones.") (citing *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2345 n.3 (2020)); *Cunningham v. Carribean Cruise Lines, Inc.*, No. 15-62580-CIV-MORENO, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) ("While Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone numbers."); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1320–21 (S.D. Fla. 2012) ("the TCPA's residential calls prohibition is contained within a separate subsection from the cellular calls prohibition," *comparing* 47 U.S.C. § 227(b)(1)(A)(iii) *with* § 227(b)(1)(B), where "[t]he different provisions also provide different exemptions"),

These decisions collectively reflect the common understanding that "residential telephone" refers to a "home phone," i.e., "land line," and not a cell phone service.[6] *See Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1307 (11th Cir. 2021) (Courts "assume that Congress uses words in a statute as they are commonly understood"; "Moreover, courts do not read individual words or terms in isolation, but instead in light of their context within a particular text" (citations and internal quotations omitted)). Indeed, while the regulation under 47 C.F.R. § 64.1200(c) tracks the statutory language in proscribing telephone solicitations to any "residential telephone subscriber" whose number appears on the DNC registry, the FCC created a separate rule under § 64.1200(e) to prohibit calls to "wireless telephone numbers" on the DNC list. *See* 2003 FCC Order ¶ 33. The subsequent agency action evidences the FCC's own view that the term "residential telephone subscriber" does not include cell phone subscribers. *See Glasser*, 948 F.3d at 1308 (concluding, in an analogous context, that the FCC's 2003 order expanding the autodialer definition conflicted with its initial "[c]ontemporaneous understanding" of the term as precluding devices that merely called numbers stored in a database).

Plaintiff cannot assert a claim under 47 U.S.C. § 227(c) for alleged text

---

*aff'd*, 755 F.3d 1265 (11th Cir. 2014).

[6] *See also Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring op.) (noting that the TCPA "limits robocalls to residential landlines," distinct from the provision that "concerns robocalls to cell phones" under § 227(b)(1)(A)(iii)).

messages sent to his cell phone because both the TCPA and the implementing regulation under 47 C.F.R. § 64.1200(c) expressly restrict calls made only to a *residential telephone subscriber*, not calls to a cell phone subscriber.[7] Under the settled *expressio unius* canon, the omission was deliberate in light of the TCPA's textual distinction between residential and cellular phones. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."), *superseded by statute on other grounds*, Pub. L. No. 109-366, § 7, 120 Stat. 2600, 2635-36 (2006) (amending 28 U.S.C. § 2241); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"); *Catalyst*

---

[7] The TCPA creates a private right of action for an alleged "violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). Congress directed the FCC to engage in rulemaking "concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1) (emphasis added). Consistent with language in the TCPA, 47 C.F.R. § 64.1200(c)(2) prohibits calls to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. . . ." Pursuant to its authority under § 227(c)(2), the FCC adopted this regulation "to implement methods and procedures for protecting the privacy rights described in [§ 227(c)(1)]," including by establishing "a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations . . . ." *Id.* § 227(c)(3) (emphasis added).

*Pharms.*, 14 F.4th at 1309 ("We must presume that Congress acts intentionally when it omits language included elsewhere in the same statute . . . .").

Moreover, a straightforward interpretation of "residential telephone subscriber" is one who subscribes to a "residential telephone" service. This construction is supported not only by the preceding section 227(b), but also by the nearest-reasonable-referent canon, a common-sense proximity principle holding that "a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331, 1336 (11th Cir. 2016); *see also ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, 113 F.4th 1312, 1323 (11th Cir. 2024) ("'adjectives, adverbs, and adverbial or adjectival phrases' normally modify the closest reasonable noun or verb"). Plaintiff contends he qualifies as a "residential telephone subscriber" because he uses his cell phone number as a "personal residential telephone number" and not for "business or commercial purposes." Compl. ¶¶ 12–13. But the statute does not refer to a subscriber or user of any telephone service so long as that phone number is used for "residential" and non-commercial purposes. As the Court's ruling on Kendo's motion to dismiss indicates, Plaintiff's construction depends on adopting the FCC's "alteration" of the term to expand coverage under § 227(c). D.E. 28 at 14.

While there is no controlling Eleventh Circuit case deciding whether section 227(c) applies to cell phone numbers, the Court cannot interpret "residential

telephone" under § 227(c) as meaning something different than how that term is construed in § 227(b). *See Hylton v. United States AG*, 992 F.3d 1154, 1158 (11th Cir. 2021) (applying the "prior-construction canon" which "establishes that '[i]f a statute uses words or phrases that have already received authoritative construction by the jurisdiction's court of last resort, . . . they are to be understood according to that construction'"; further, "'When Congress use[s] the materially same language in [a more recent enactment], it presumptively [is] aware of the longstanding judicial interpretation of the phrase and intend[s] for it to retain its established meaning'"). Nor can the Court (or the FCC, for that matter) rewrite the statute. *See Catalyst Pharms.*, 14 F.4th at 1309 ("[W]e must give meaning to Congress's choice. Indeed, '[c]ourts have no authority to alter statutory language.' . . . And 'we are not allowed to add or subtract words from a statute; we cannot rewrite it.'" (citations omitted)).

Applying these principles of statutory interpretation, section 227(c) cannot be construed to cover calls to cell phones. As the Southern District of Florida explained:

> The TCPA clearly draws a distinction between cellular telephones and residential telephones. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting certain prerecorded calls to "any telephone number assigned to a ... cellular telephone service"), *with id.* § 227(b)(1)(B) (prohibiting the same prerecorded calls to "any residential telephone line"); *see also id.* § 227(b)(2)(H) (permitting the FCC to limit the number and duration of debt collection calls made to a number assigned to a "cellular telephone service," but omitting any reference to debt collection calls made to residential telephone lines). Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that

15

> Congress intentionally omitted any reference to cellular telephones in section 227(c). . . . Thus, when Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers. Consequently, the protections offered to numbers on the DNC Registry, *see* 47 C.F.R. § 64.1200(c)(2), would not apply to cellular telephone numbers, and Plaintiff's claim would be foreclosed.

*Turizo*, 603 F. Supp. 3d at 1340–41.[8]

Accordingly, Plaintiff cannot state a claim under § 227(c) based on text messages sent to his cell phone number, and the assertion that he uses it as a residential phone line, Compl. ¶ 12, is not determinative because the TCPA plainly distinguishes cell phones from residential phones. *See, e.g.*, *Cunningham*, 2016 WL 7494871, at *2 ("[T]he Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing."); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) ("Plaintiff's characterization of the cell phone as a 'residential, cellular telephone line' is not determinative of this question. These are not factual allegations, but legal terms drawn from the operative statute…. Congress's structural choice to treat these different types of calls differently has been observed by abundant and uniform . . .

---

[8] *See also Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) (ruling that the plaintiff could not allege a violation of the DNC provision because "[t]he structure and language of the TCPA controvert coverage of cell phones" under § 227(c); citing *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) and finding that "[t]he Eleventh Circuit noted the distinctions between a cell phone and residential phone" under the TCPA).

authority."). Plaintiff's Complaint should therefore be dismissed.

### C.    The 2003 FCC Order Is Invalid and Entitled to No Deference

The Court previously concluded that "the FCC changed the definition of "residential subscriber" in its 2003 order and "expanded" liability under section 227(c) based on this "alteration." D.E. 28 at 14; *see also* 47 C.F.R. § 64.1200(e) (providing that the rules under § 64.1200(c) and (d) regulating calls to "residential telephone" lines are applicable to "calls to wireless telephone numbers" in accordance with the 2003 FCC Order). *McLaughlin* held that district courts are not obligated to defer to the FCC's interpretations of the TCPA and directed courts to simply "interpret the TCPA under ordinary principles of statutory interpretation." *See McLaughlin*, 145 S. Ct. at 2013. While courts remain free to "afford[] appropriate respect to the agency's interpretation," *id*., no deference is warranted here because the FCC exceeded its statutory authority to "implement" but not "change" the TCPA. *See Ins. Mktg. Coal. Ltd.*, 127 F.4th at 317 (ruling "the FCC overstepped statutory boundaries" in its "attempt to 'implement' the TCPA"). The 2003 FCC Order impermissibly expands Section 227(c) beyond its plain text and purports to amend the TCPA in a manner that is barred under Circuit precedent.

### 1.    The 2003 FCC Order Impermissibly Expands Section 227(c)

Congress did not authorize the FCC to prescribe regulations under § 227(c) for cellular subscribers and instead explicitly instructed the agency to establish "a

single national database to compile a list of telephone numbers of *residential subscribers*. . . ." *See* 47 U.S.C. § 227(c)(3) (emphasis added). This limitation is reflected in the implementing regulation under § 64.1200(c), which applies only to "residential telephone subscriber[s]," and does not refer to cellular subscribers. The Eleventh Circuit previously concluded that the TCPA granted the FCC limited rulemaking authority with respect to calls made to *residential* telephones, but not calls to cell phone numbers. *See Osorio*, 746 F.3d at 1250.[9]

By contrast, § 64.1200(e) is not based on the express provisions of § 227(c), but rather on a broad reading of legislative intent—inconsistent with the plain terms of the statute—as the agency explained in the 2003 FCC Order. As observed by the

---

[9] In *Osorio*, the Eleventh Circuit concluded that the FCC-created exemption for calls based on an "established business relationship" was promulgated under the TCPA's section 227(b)(2)(B) (which "permits the FCC 'by rule or order, [to] exempt [certain categories of calls] from the requirements of paragraph (1)(B) of this subsection [*i.e.*, 47 U.S.C. § 227(b)(1)(B)]'" prohibiting autodialed calls to "any residential telephone line"), but the same exemption did not apply to calls to cell phone numbers under § 227(b)(1)(A)(iii) because "47 U.S.C. § 227(b)(2)(B) does not authorize rulemaking with regard to 47 U.S.C. § 227(b)(1)(A)(iii)." *Id.*

This limited grant of authority is found not only in § 227(b) but also § 227(c), underscoring that Congress sought to regulate calls to cell phones differently from calls to residential lines, as evidenced by the statutory structure. *See* 47 U.S.C. § 227(c)(1) & (c)(2). Applying the same straightforward reading of the statute as instructed by *Osorio*, a cell phone user cannot assert a claim pursuant to § 227(c) because the DNC provision of the TCPA by its plain terms apply exclusively to residential telephone subscribers. Thus, extending liability under § 227(c) to include calls made to "wireless" phone numbers listed on the DNC registry would deviate from the clear language of the statute and exceed the authority granted by Congress.

Eleventh Circuit, the 2003 FCC Order sought to "expand the [TCPA's] coverage" beyond its plain terms based on a "broad 'reading of the legislative history'" that the Court rejected in an analogous context. *See Glasser*, 948 F.3d at 1308–09 (adopting a narrower interpretation of the autodialer provision based on the language of the statute and not the FCC order). Here, the FCC expressly relied on the autodialer provision under § 227(b)—*not* the DNC provision in § 227(c)— to conclude that "the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA." 2003 FCC Order ¶ 33 (*citing* 47 U.S.C. § 227(b)(1)(iii) in concluding that "Congress has indicated its intent to provide significant protections under the TCPA to wireless uses"). Thus, "the 2003 Order itself recognizes that section 227(c) granted the FCC authority with respect to 'residential' numbers only." *Turizo*, 603 F. Supp. 3d at 1341. "But by presuming that any wireless number on the DNC Registry qualifies as 'residential,' the FCC expands 227(c)(5)'s right of action to cellular telephone numbers—without any congressional grant of authority to do so." *Id.* The FCC order is therefore invalid and entitled to no deference.

Confirming this conclusion, the Eleventh Circuit recently considered and rejected another FCC order that expanded TCPA restrictions beyond statutory bounds. *See Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th at 316. At issue was a 2023 FCC order purporting to define "prior express consent" in 47 U.S.C. § 227(b)(1) to require

19

"one-to-one consent" to certain automated calls (primarily in lead generation). *Id.* at

308–10. The Court vacated the FCC order as invalid, finding that it "exceed[ed] the

FCC's statutory authority to 'implement' the TCPA" by "redefining" consent under

the statute to be more restrictive than its "settled meaning" under common law. *Id.*

at 312. In concluding that "the FCC overstepped statutory boundaries," the Court

admonished that "[a]gencies have only those powers given to them by Congress, and

enabling legislation is generally not an open book to which the agency [may] add

pages and change the plot line." *Id.* at 317 (cleaned up). Further, it rejected the FCC's

policy arguments, ruling that "[a]textual good policy cannot overcome clear text."

*Id*. at 315 (citing *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 325 (2014) ("An agency

has no power to 'tailor' legislation to bureaucratic policy goals by rewriting

unambiguous statutory terms.")); *see also Duguid*, 592 U.S. at, 406, 408 ("Congress'

'broad privacy-protection goals' cannot "overcome the clear commands of [the

TCPA's] text and the statutory context").

Following *Ins. Mktg. Coal. Ltd.*, the FCC's blatant reliance on policy

objectives to rewrite and *change* the definition of "residential telephone subscriber"

to include cell phone users in § 227(c) should likewise be rejected as invalid.

### 2.    The FCC Lacks Authority to Create a Private Right of Action for Cell Phone Users

The Court previously ruled that in "chang[ing] the definition of 'residential

subscriber,'" the FCC "*expand[ed]* the private cause of action in section 227(c),"

20

but did not "*create* a new one." D.E. 28 at 14. That ruling was premised on prior panel precedent on the Hobbs Act, which required the Court to apply the 2003 FCC Order to the statutory term as used throughout the TCPA. *Id.* at 14–15. After *McLaughlin*, that conclusion no longer holds. The Eleventh Circuit has made clear that "a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Here, Congress only created a cause of action for *residential* telephone subscribers. Section 227(c)(5) expressly limits the private remedy to a "violation of the regulations prescribed under this subsection" (not the autodialer provision cited in the 2003 FCC Order) to "protect residential telephone subscribers' privacy rights." 47 U.S.C. § 227(c)(1) & (c)(5). A consistent reading of "residential telephone" throughout the statute requires construing § 227(c)(5) as barring a private right of action for cell phone users like Plaintiff. "The fact that Congress has expressly provided private litigants with one right of action . . . powerfully suggests that Congress did not intend to provide other private rights of action." *Love v. Delta Air Lines,* 310 F.3d 1347, 1357 (11th Cir. 2002) (holding that based on "the text and structure" of the Air Carrier Access Act, Congress did not create a private right of action to vindicate the statute's prohibition against disability-based discrimination by air carriers); *see also In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc) ("In the two decades since *Sandoval* was decided, we have

faithfully heeded the Supreme Court's directives and have demanded clear evidence of congressional intent as a prerequisite to a private right of action.").

Because § 227(c) by its plain terms applies only to calls made to a residential phone line, Plaintiff cannot allege a cause of action under § 227(c)(5) for alleged calls or texts to his cell phone number.

## IV.    CONCLUSION

For all of the foregoing reasons, Kendo respectfully requests that the Court dismiss the Complaint with prejudice and enter judgment for Kendo.

Respectfully submitted this 4th day of August, 2025.

*/s/ Lori Chang*                               
Steven J. Rosenwasser (SBN GA 614908)
William E. Eye (SBN GA 688914)
Greenberg Traurig, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone:  678.553.2100
Facsimile:  678.553.2212
Email:        Steven.Rosenwasser@gtlaw.com
                 eyew@gtlaw.com

Lori Chang (SBN CA 228142) (*pro hac vice*)
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone:  310.586.7700
Facsimile:  310.586.7800
Email:        changl@gtlaw.com

*Attorneys for Defendant Kendo Holdings, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Counsel hereby certifies that the text of this document has been prepared with Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Lori Chang*
Lori Chang

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 4th day of August,  2025, I electronically filed the

foregoing **DEFENDANT KENDO HOLDINGS, INC.'S MEMORANDUM IN**

**SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** with the

Clerk of Court using the CM/ECF efiling system, which will automatically send

email notification of such filing to all attorneys of record as follows:

James Davidson
Aaron D. Radbil
GREENWALD DAVIDSON & RADBIL, PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Email: jdavidson@gdrlawfirm.com
aradbil@gdrlawfirm.com
*Counsel for Plaintiff*

Steven Howard Koval
THE KOVAL FIRM, LLC
3575 Piedmont Road NE
Building 15, Suite 120
Atlanta, GA 30305
Email: shkoval@aol.com
*Counsel for Plaintiff*

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Email: anthony@paronichlaw.com
*Counsel for Plaintiff*

This 4th day of August, 2025.

*/s/ Lori Chang*
Lori Chang

24