## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Ethan Radvansky, *on behalf of himself and others similarly situated*, | ) Case No.: 3:23-cv-00214-TCB<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| Kendo Holdings, Inc., d/b/a Fenty Beauty, | )<br>) |
| Defendant. | )<br>) |
| _____ | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

## Table of Contents

Introduction ........................................................................................1

Statement of Relevant Procedure .............................................................3

Statement of Relevant Facts ....................................................................5

Argument.............................................................................................5

   I.   The TCPA at 47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers. ...................................................................5

   II.  The TCPA at 47 U.S.C. § 227(c) applies to text messages..........................13

Conclusion..........................................................................................18

## Table of Authorities

**Cases**

*Barr v. American Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ........................................................................18

*Barton v. Temescal Wellness, LLC*,
   525 F. Supp. 3d 195 (D. Mass.) ..........................................................18

*Breda v. Cellco P'ship*,
   934 F.3d 1 (1st Cir. 2019) ...................................................................15

*Breslow v. Wells Fargo Bank, N.A.*,
   857 F. Supp. 2d 1316 (S.D. Fla. 2012) ...............................................12

*Cabrera v. Gov't Emps. Ins. Co.*,
   452 F. Supp. 3d 1305 (S.D. Fla. 2014) ...............................................12

*Cacho v. McCarthy & Kelly LLP*,
   739 F. Supp. 3d 195 (S.D.N.Y. 2024).........................................*passim*

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016)..................................................................2, 16, 18

*Cunningham v. Caribbean Cruise Lines, Inc.*,
   No. 15-cv-62580, 2016 WL 7494871 (S.D. Fla. Dec. 29, 2016).........12

*Davis v. CVS Pharmacy, Inc.*,
   No. 4:24-CV-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025).....18

*Dawson v. Porch.com*,
   No. 2:20-CV-00604-RSL, 2024 WL 4765159 (W.D. Wash. Nov. 13, 2024).....15

*Duran v. La Boom Disco, Inc.*,
   955 F.3d 279 (2d Cir. 2020)................................................................15

*Ferrell v. Colourpop Cosmetics, LLC*,
   2025 U.S. Dist. LEXIS 140893 (C.D. Ca. Jul. 8, 2025) ........................2

*Harriel v. Bealls, Inc.*,
No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025) .1, 7

*Isaacs v. USHealth Advisors, LLC*,
No. 3:24-CV-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) ...*passim*

*Jackson v. Direct Bldg. Supplies LLC*,
No. 4:23-cv-1569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) .....................8, 11

*Jones v. Blackstone Med. Servs., LLC*,
No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025) .........................17

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) .......................................................................14

*Lirones v. Leaf Home Water Sols., LLC*,
No. 5:23-CV-2087, 2024 WL 4198134 (N.D. Ohio Sept. 16, 2024)....................9

*Lyman v. QuinStreet, Inc.*,
No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July 12, 2024) ...................11, 12

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013)............................................................................................10

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025).......................................................................................1, 13

*Nat'l Cable & Telecom. Ass'n v. FCC*,
567 F.3d 659 (D.C. Cir. 2009) ...........................................................................15

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019)............................................................................................17

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)..............................................................................................15

*Osorio v. State Farm Bank, F.S.B.*,
746 F.3d 1242 (11th Cir. 2014) .........................................................................12

*Pa. Dep't of Corrs. v. Yeskey*,
   524 U.S. 206 (1998) ....................................................................................15

*Russello v. United States*,
   464 U.S. 16 (1983) .....................................................................................10

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ......................................................................15

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ............................................................2, 14, 15

*Sunshine State Reg'l Ctr., Inc. v. Dir., US Citizenship & Immigr. Servs.*,
   143 F.4th 1331 (11th Cir. 2025) .................................................................11

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
   603 F. Supp. 3d 1334 (S.D. Fla. 2022) ......................................................10

*VanderSloot v. Charles Baratta LLC*,
   No. 24-cv-7096, 2025 WL 1898929 (E.D.N.Y. July 9, 2025)...................10

*Wilson v. Hard Eight Nutrition LLC*,
   No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025).........*passim*

*Wilson v. Skopos Fin., LLC*,
   No. 6:25-cv-376, 2025 WL 2029274 (D. Or. July 21, 2025) .................14, 17

## Statutes

47 U.S.C. § 227(a)(2)(A) .................................................................................8

47 U.S.C. § 227(a)(4) ......................................................................2, 13, 14, 16

47 U.S.C. § 227(c)(1) ......................................................................9, 12, 13, 14

47 U.S.C. § 227(c)(2) .....................................................................................12

47 U.S.C. § 227(c)(3) ................................................................................9, 13

## Other Authorities

38 F.C.C. Rcd. at 12257 ...........................................................................17

Black's Law Dictionary, 6th Ed. ............................................................14

Paging Network, Inc., Annual Report (1993) ........................................16

Pub. L. No. 102–243, 105 Stat. 2394, § 2 ...............................................8

Telephone Consumer Protection Act of 1991,
    Pub. L. 102–243, 105 Stat. 2394, § 3(a) ...........................................16

## Regulations

47 C.F.R. § 64.2305(d) .............................................................................9

## Introduction

Kendo Holdings, Inc., d/b/a Fenty Beauty ("Defendant") asks this Court to dismiss Ethan Radvansky's class action complaint with prejudice "[b]ecause [47 U.S.C.] § 227(c) by its plain terms applies only to calls made to a residential phone line," ECF No. 43-1 at 28, so, in its view, Ethan Radvansky ("Plaintiff") "cannot allege a cause of action under [47 U.S.C.] § 227(c)(5) for alleged calls or texts to his cell phone number." *Id*. But just last month this Court rejected Defendant's position. *See Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *2-3 (N.D. Ga. Aug. 7, 2025) (May, J.) (rejecting the defendant's argument "that [47 U.S.C. § 227(c)] does not apply to Plaintiff, because the term 'residential subscriber' categorically excludes cell phone users from [its] protections."). And this Court is not alone. In fact, "[i]t appears that since *McLaughlin Chiropractic* [*Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)], every court examining this particular issue concerning 'residential' phones has held that [47 U.S.C. § 227(c)]'s provisions apply to cell phones." *Harriel v. Bealls, Inc.*, No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025) (citing *Isaacs*, 2025 WL 2268359; *Ferrell v. Colourpop Cosmetics, LLC*, 2025 U.S.

Dist. LEXIS 140893 (C.D. Ca. Jul. 8, 2025); *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025)).[1]

As well, and by way of just a single paragraph, *see* ECF No. 43-1 at 14-15, Defendant contends that "Plaintiff's claim fails for the . . . reason that [47 U.S.C.] § 227(c) applies only to 'calls' and not text messages." *Id*. at 14. Defendant ignores, however, that 47 U.S.C. § 227(c) regulates "telephone solicitations," a term defined to include both "*call[s]*" and "*message[s]*." *See* 47 U.S.C. § 227(a)(4) (emphasis added). Moreover, Defendant fails to mention that the Supreme Court—as have other courts—held that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Additionally, as the Ninth Circuit explained, because "the ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone," *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 & n.3 (9th Cir. 2009) (citing Webster's Third New International Dictionary 318 (2002)), "a text message is a 'call' within the TCPA." *Id*. So even if 47 U.S.C. § 227(c) applied only

---

[1]    Of note, counsel for Defendant was counsel for the defendant in *Wilson*. And counsel for Defendant's firm was counsel for the defendant in *Harriel*. No matter, absent from Defendant's motion for judgment on the pleadings is any mention of the decision in *Wilson*, despite that it was issued over a month before Defendant filed its motion. *Compare Wilson*, 2025 WL 1784815 (issued on June 27, 2025), *with* ECF No. 43-1 (filed on August 4, 2025).

to "calls," as opposed to "telephone solicitations"—it does not—47 U.S.C. § 227(c) would still apply to text messages.

## Statement of Relevant Procedure

On November 9, 2023, Plaintiff filed his class action complaint against Defendant under the Telephone Consumer Protection Act ("TCPA"). *See* ECF No. 1. Through his class action complaint, Plaintiff alleges Defendant violated 47 U.S.C. § 227(c)(5) and its implementing regulation, 47 C.F.R. § 64.1200, by delivering or causing to be delivered more than one solicitation text message to his personal cellular telephone in a twelve-month period. *See* ECF No. 1, ¶¶ 58-59.

On January 10, 2024, Defendant filed its motion to dismiss Plaintiff's class action complaint, *see* ECF No. 16, in opposition to which Plaintiff filed his response, *see* ECF No. 21, and in support of which Defendant filed its reply. *See* ECF No. 23. On August 13, 2024, Judge Batten issued an order denying Defendant's motion to dismiss. *See* ECF No. 28. Through that order, Judge Batten wrote, in relevant part:

> Because the 2003 FCC order applies to section 227(c), the Court must defer to the FCC's interpretation of "residential subscribers." Many other courts are in accord. . . . This Court therefore joins the majority of courts throughout the country who have held that cell phones like [the plaintiff's] are entitled to the TCPA's protection as residential telephones.").

*Id*. at 28.

On August 30, 2024, Defendant filed its motion to certify for interlocutory appeal the question of whether "the [Hobbs Act] require[s] district courts to treat as

binding the [FCC] interpretation of the [TCPA]," *see* ECF No. 31, in opposition to which Plaintiff filed his response, *see* ECF No. 32, and in support of which Defendant filed its reply. *See* ECF No. 34. On September 23, 2024, Judge Batten granted Defendant's motion to certify the subject question for interlocutory appeal. *See* ECF No. 35.

On October 3, 2024, Defendant filed, with the Eleventh Circuit, its petition for permission to appeal the certified question pursuant to 28 U.S.C. § 1292(b), *see* USCA11, Doc. No. 1-2, in opposition to which Plaintiff filed his answer. *See id.*, Doc. No. 18. On March 18, 2025, the Eleventh Circuit denied Defendant's petition for permission to appeal the certified question. *See id.*, Doc. No. 22-2.

On June 30, 2025, at Defendant's request, *see* ECF No. 39, this Court issued an order staying this matter pending resolution of Defendant's to-be-filed Rule 12 motion:

> Having reviewed the above-referenced motion and for good cause shown, the Court GRANTS Defendant Kendo Holdings, Inc.'s ("Kendo") Unopposed Motion for Stay of Proceedings and Entry of Briefing Schedule. These proceedings are hereby stayed pending resolution of Kendo's forthcoming Rule 12 motion.

ECF No. 42.

On August 4, 2025, Defendant filed its motion for judgment on the pleadings, *see* ECF No. 43, together with a supporting memorandum. *See* ECF No. 43-1.

## Statement of Relevant Facts

Plaintiff is, and since March 2023 was, the regular and sole user of his cellular telephone number. *See* ECF No. 1, ¶ 11. Plaintiff uses, and at all times since March 2023 used, his cellular telephone number as his personal residential telephone number. *See id.*, ¶ 12. Plaintiff does not use, and at no time since March 2023 used, his cellular telephone number for business or commercial purposes. *See id.*, ¶ 13.

On April 18, 2023, Plaintiff registered his cellular telephone number with the National Do Not Call Registry ("DNC Registry"). *See id.*, ¶ 14. Thirty-one or more days later, Defendant delivered or caused to be delivered to Plaintiff's cellular telephone number at least seventeen advertisement or marketing text messages—all of which were intended for someone other than, and unknown to Plaintiff. *See id.*, ¶¶ 15-19.

Plaintiff did not request information or promotional materials from Defendant. *See id.*, ¶ 21. Nor did Plaintiff give Defendant prior express consent or permission to deliver or cause to be delivered advertisement or marketing text messages to his cellular telephone number. *See id.*, ¶ 20.

## Argument

### I.  The TCPA at 47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers.

Through its motion for judgement on the pleadings, Defendant argues that "a private right of action under 47 U.S.C. § 227(c) applies only to 'residential telephone

subscribers,' not cell phone users like Plaintiff." ECF No. 43-1 at 7.[2] This Court, however, very recently considered and rejected an identical argument:

> Defendant argues that [47 U.S.C. § 227(c)] does not apply to Plaintiff, because the term "residential subscriber" categorically excludes cell phone users from [its] protections.
>
> \*     \*     \*
>
> Defendant argues that the term "residential subscriber" encompasses only users of landline, home phones. . . . Specifically, Defendant contends that, because the term "residence" refers to a person's home or abode, "residential subscriber" excludes cell phones, which can be used outside of the home. . . . Plaintiff responds that the TCPA does not categorically exclude cell phone users and, because Plaintiff uses his cell phone only for personal purposes rather than business purposes, [47 U.S.C. § 227(c)] applies to the text messages he received. . . .
>
> The Court agrees with Plaintiff.

*Isaacs*, 2025 WL 2268359, at \*2-3.[3]

---

[2]     *See also* ECF No. 43-1 at 13 ("the legal remedy provided under the DNC provision expressly applies to 'residential telephone subscribers,' not cell phone users."); *id*. at 14 ("But neither § 227(c), nor the regulation under § 64.1200(2), apply to text messages sent to cell phone numbers. . . . Plaintiff therefore cannot bring suit under 47 U.S.C. § 227(c) for alleged texts sent to his cell phone because that provision, by its plain terms, applies to calls made to residential (not cellular) telephone subscribers only."); *id*. at 18-19 ("Plaintiff cannot assert a claim under 47 U.S.C. § 227(c) for alleged text messages sent to his cell phone because both the TCPA and the implementing regulation under 47 C.F.R. § 64.1200(c) expressly restrict calls made only to a *residential telephone subscriber*, not calls to a cell phone subscriber."); *id*. at 28 ("Because § 227(c) by its plain terms applies only to calls made to a residential phone line, Plaintiff cannot allege a cause of action under § 227(c)(5) for alleged calls or texts to his cell phone number.").

[3]     "It appears that since *McLaughlin Chiropractic*, every court examining this particular issue concerning 'residential' phones has held that [47 U.S.C. § 227(c)]'s

In reaching its conclusion—that 47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers—this Court refused Defendant's contention that "principles of statutory construction confirm section 227(c) does not apply to cell phone users," ECF No. 15, but only to landline users:

> [T]he Court begins with the plain text of the applicable statutes and regulations. . . .
>
> *      *      *
>
> . . . A "subscriber" is a "person who makes a regular payment in return for . . . access to a commercially provided service." *Subscriber*, Oxford English Dictionary, https://www.oed.com (2025). The term "residential" modifies "subscribers," meaning that the TCPA applies to a certain type of phone *subscriber* rather than to a particular type of phone *technology*. The ordinary definition of "residence" is the "act or fact of living in a given place for some time." *Residence*, Black's Law Dictionary (12th ed. 2024). Thus, applying the ordinary definition of "residential" to the term "subscriber," a "residential subscriber" is a person who maintains a phone for the purposes of their private residence rather than for commercial or business purposes. In other words, a residential subscriber is a person who uses their phone for activities associated with their private, domestic life.
>
> Defendant argues otherwise, contending that the term "residential subscriber" encompasses only landline phones—not cell phones. . . . Defendant's interpretation of a residential subscriber ignores the fact that "residential" modifies "subscriber," meaning that the definition is tethered to a type of *person* rather than a type of *technology*. . . .

---

provisions apply to cell phones." *Harriel*, 2025 WL 2379617, at *2; *see, e.g.*, *Wilson*, 2025 WL 1784815, at *7 ("In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).").

*Isaacs*, 2025 WL 2268359, at *2-3.

Stated otherwise, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*[4]

And "residential" is just the opposite of "business." *See Wilson*, 2025 WL 1784815, at *5. It refers to the purposes for which a telephone is used, not its physical characteristics or location. *See Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5-7 (M.D. Pa. Jan. 17, 2024). This, of note, is how Congress used, and uses, the term. For example, in the original TCPA's statutory findings, Congress noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–243, 105 Stat. 2394, § 2 (emphasis added). And the current text of the TCPA, as amended in 2005, contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A). Moreover, FCC regulations dating back to the 1990s explicitly define "residential

---

[4]    *See also Wilson*, 2025 WL 1784815, at *5 ("So, the ordinary, contemporary, and common meaning of a "telephone subscriber" is an individual who makes regular payments to *use* telephone service on an ongoing basis.").

subscriber" to mean "a subscriber . . . *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added).[5]

At bottom, therefore, the terms "residential telephone subscriber" and "residential subscriber" refer to a subscriber who uses his or her telephone—whether landline or cellular—"for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206.[6] In turn, since 47 U.S.C. § 227(c) protects "residential telephone subscribers," or elsewhere "residential subscribers," 47 U.S.C. §§ 227(c)(1), (c)(3), it applies to personal cellular telephone subscribers.

And Defendant's suggestion otherwise, which it states is based on "the settled *expressio unius* canon," ECF No. 43-1 at 19, falls flat. In short, Defendant asserts that because 47 U.S.C. § 227(c) does not reference cellular telephones, but a separate section of the TCPA—47 U.S.C. § 227(b)—does, Congress must have intentionally excluded from 47 U.S.C. § 227(c) protection for cellular telephone subscribers. *See*

---

[5]    *See also* 14 F.C.C. Rcd. 15550, 15692 (1999) ("Residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber.").

[6]    *Accord Wilson*, 2025 WL 1784815, at *5 ("So, 'residential telephone subscribers,' refers to individuals, subscribers, who make regular payments to *use* telephone service at home, that is, people who use a telephone for a personal or private purpose—a *use* traditionally tied to the home—as opposed to a commercial or business use."); *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) ("Furthermore, according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' a residential subscriber is one who maintains a phone for residential purposes . . . *i.e.*, for personal activities associated with his or her private, domestic life.").

9

ECF No. 43-1 at 16-20. Defendant's interpretation, thus, actually invokes the canon that when "Congress includes particular language in one section of a statute but omits it in another section," the omission is presumptively intentional. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

But "[t]he force of any negative implication . . . depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). And context undercuts the inference Defendant seeks to draw because 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c) have "markedly different scope and structure." *Wilson*, 2025 WL 1784815, at *4.[7] That is, while 47 U.S.C. § 227(b) identifies intrusive telemarketing practices based on the *technologies* involved, 47 U.S.C. § 227(c) focuses on protecting identified *people*— "residential subscribers"—from unwanted telephone solicitations. *See Isaacs*, 2025 WL 2268359, at *3.[8] And that difference in structure and focus provides the most

---

[7]    *See also VanderSloot v. Charles Baratta LLC*, No. 24-cv-7096, 2025 WL 1898929, at *4 (E.D.N.Y. July 9, 2025) ("Relevant here, section 227(c), addresses telephone solicitations that intrude on the privacy of the subscriber, regardless of whether they are transmitted by an ATDS or an artificial or prerecorded voice; it therefore has a markedly different scope and structure [than Section 227(b)].'").

[8]    *See also Wilson*, 2025 WL 1784815, at *4 ("But Section 227(c) . . . focuses not on the equipment used to generate and transmit calls but on end-user protections."); *Cacho*, 739 F. Supp. 3d at 204-05 ("Cellular telephones—like telephone lines, paging services, radio common carrier services, and telephone facsimile machines—are a kind of telephonic communications technology. A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology.").

natural explanation for why "cellular telephones" are expressly mentioned in 47 U.S.C. § 227(b), but not 47 U.S.C. § 227(c).

As well, Defendant's proposed negative inference disregards Congress's intentional choice to use different terminology in the two different parts of the statute at issue—"residential telephone *line*" in 47 U.S.C. § 227(b) versus "residential telephone *subscriber*" in 47 U.S.C. § 227(c). And "when a statute uses one term in one place and a distinct term elsewhere, the difference matters." *Sunshine State Reg'l Ctr., Inc. v. Dir., US Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025). Congress, therefore, almost certainly intended "residential telephone *line*" and "residential telephone *subscriber*" to carry different meanings in the two different contexts. *See Cacho*, 739 F. Supp. 3d at 205.[9] For this reason, then, opinions implying that the term "residential telephone line" excludes cellular telephones in 47 U.S.C. § 227(b)—like *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250

---

[9]      *See also Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ("the former provision imposes a broader restriction based on the technology used while the latter imposes a narrower restriction based on the nature of the user"); *Wilson*, 2025 WL 1784815, at *5 ("Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone *line*,' as Congress used that term in the preceding subsection."); *Jackson*, 2024 WL 184449, at *6 (same).

(11th Cir. 2014)[10]—have little-to-no utility for determining who is a "residential subscriber" in 47 U.S.C. § 227(c).

And all of this naturally aligns with the "express aim" of 47 U.S.C. § 227(c), which is to protect residential subscribers' "privacy rights." *Wilson*, 2025 WL 1784815, at *6 (quoting 47 U.S.C. §§ 227(c)(1), (2)). Indeed, "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman*, 2024 WL 3406992, at *4. Stated otherwise, as this Court wrote:

> Further, while not determinative, the Court also notes that Plaintiff's interpretation of "residential subscriber" comports with the overall purpose of the TCPA. As the Eleventh Circuit has observed, the TCPA is designed to protect residential privacy, a government interest articulated in the legislative history of the Act. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014) (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376–77 (4th Cir. 2013)). Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same. Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber—even when the cell phone is the sole phone for home use, as is increasingly the case. In other words, Defendant's interpretation would tie residential privacy interests to an obsolete and disappearing phone technology. Thus, Plaintiff's

---

[10]    *See also, e.g.*, *Cunningham v. Caribbean Cruise Lines, Inc.*, No. 15-cv-62580, 2016 WL 7494871, at *1-2 (S.D. Fla. Dec. 29, 2016); *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1313-14 (S.D. Fla. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012).

interpretation of the TCPA aligns with both the plain text and the objectives of the TCPA.

*Isaacs*, 2025 WL 2268359, at *4.

Lastly, Plaintiff previously argued that "[t]hrough its 2003 order—which binds this Court—the FCC declared that cellular telephones can be, and when placed on the DNC Registry presumptively are, residential telephones." *See* ECF No. 21 at 13-17. But in light of *McLaughlin Chiropractic Assocs., Inc.*, Plaintiff acknowledges that this Court must "determine [47 U.S.C. § 227(c)'s]  meaning under ordinary principles of statutory interpretation while affording appropriate respect to the agency's interpretation." 606 U.S. at 146. As a result, Defendant's position that "[t]he 2003 FCC order is invalid and entitled to no deference," *see* ECF No. 43-1 at 23-28, is not at issue.

## II.    The TCPA at 47 U.S.C. § 227(c) applies to text messages.

Defendant argues that "Plaintiff's claim fails for the separate and independent reason that [47 U.S.C.] § 227(c) applies only to 'calls' and not text messages." ECF No. 43-1 at 14. The problem with Defendant's contention is that 47 U.S.C. § 227(c) regulates "telephone solicitations," which plainly include text messages. *See* 47 U.S.C. §§ 227(a)(4), (c)(1), (c)(3)(F).

To be sure, the TCPA defines "telephone solicitation" as "the initiation of a telephone *call or message* . . . which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition encompasses text messages. Indeed,

contemporary dictionary definitions of the word "message" emphasize that it encompasses *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").

And this makes sense, as Congress's stated goal in enacting 47 U.S.C. § 227(c) was to "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Significant, then, is that "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954.[11]

Moreover, that 47 U.S.C. § 227(c)(5)—titled "Private right of action"—does not specifically use the term "text message" is neither surprising, nor helpful to Defendant's position. This is because the TCPA was enacted in 1991, and the first-ever text message was not sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But again, 47 U.S.C. § 227(c) explicitly covers any "telephone solicitation," which the TCPA expressly defines to include any "call or message." 47 U.S.C. § 227(a)(4). And it is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in

---

[11]    *See also Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) ("It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.").

mind in 1991. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).[12] Indeed, "[t]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212 (1998)).

But even if 47 U.S.C. § 227(c) applied only to "calls," as opposed to "telephone solicitations"—it does not—47 U.S.C. § 227(c) would still apply to text messages. As the Ninth Circuit explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone," *Satterfield*, 569 F.3d at 953-54 & n.3, and, in turn, "a text message is a 'call' within the TCPA." *Id*. at 954.[13] The Supreme Court, of course, later agreed: "A text message to a cellular telephone, it is

---

[12]     *Accord Nat'l Cable & Telecom. Ass'n v. FCC*, 567 F.3d 659, 665 (D.C. Cir. 2009) ("Congress had a particular manifestation of a problem in mind, but in no way expressed an unambiguous intent to limit the Commission's power solely to that version of the problem.").

[13]     *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 (2d Cir. 2020) ("It is undisputed that [a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA]."), *cert. granted, judgment vacated,* 141 S. Ct. 2509, 209 L. Ed. 2d 543 (2021), and *abrogated on other grounds by Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021); *Breda v. Cellco P'ship*, 934 F.3d 1, 5 n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communication, such as text messages."); *Dawson v. Porch.com*, No. 2:20-CV-00604-RSL, 2024 WL 4765159, at *5 (W.D. Wash. Nov. 13, 2024) ("The Court agrees with this analysis regardless whether deference to the agency's interpretation is appropriate or not."); *accord* ECF No. 21 at 17-19 (collecting cases).

undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co.*, 577 U.S. at 156.

Also noteworthy, the only other reference to "calls" in 47 U.S.C. § 227(c) includes "messages." To be certain, 47 U.S.C. § 227(c)(1)(D) directs the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)." And in the original TCPA—to which 47 U.S.C. § 227(c)(1)(D) was directed—47 U.S.C. § 227(a)(3) referred to the statutory definition of "telephone solicitation," which references both "call[s]" and "message[s]." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) ("The term 'telephone solicitation' means the initiation of a telephone call or message . . . ."). Thus, 47 U.S.C. § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" includes text messages. *See* 47 U.S.C. § 227(a)(4).

As well, 47 U.S.C. § 227(b)(1)(A)—an autodialer-specific provision—uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[14] It follows, therefore, that such use of the word "call" must have encompassed

---

[14]    *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1993)**,** available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that

both voice and text transmissions. And reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting an "anomalous" interpretation).

Lastly, the single post-*McLaughlin Chiropractic Assocs., Inc.* decision Defendant cites in support of its position that 47 U.S.C. § 227(c) does not regulate text messages—*Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025)—is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4. But that gets statutory interpretation wrong in two important ways.

First, as the Supreme Court warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). Second, and once more, it is irrelevant that Congress did not have text messages specifically in mind in 1991. "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson*, 2025 WL 2029274, at

---

92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

*4 (rejecting the defendant's argument that "the protections of the DNC Registry should not apply to text messages").[15]

## Conclusion

Plaintiff respectfully requests that this Court deny Defendant's motion for judgment on the pleadings.

Date: September 18, 2025                    */s/ Aaron D. Radbil*
                                           Aaron D. Radbil (*pro hac vice*)
                                           James L. Davidson (*pro hac vice*)
                                           Greenwald Davidson Radbil PLLC

---

[15]    In the spirit of candor, the court in *Davis v. CVS Pharmacy, Inc.* also held that "a text message is not a 'telephone call.'" No. 4:24-CV-477-AW-MAF, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025). But the court's reasoning does not withstand scrutiny. And while much of the court's analysis is addressed above, albeit without specific reference to it, one aspect of the court's decision—that "neither *Campbell-Ewald* nor *Facebook* includes any binding interpretation of the statutory term 'telephone call' at issue here," *id.* at *2—is worth addressing specifically. In short, the court effectively held that the Supreme Court's statement that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)," *Campbell-Ewald Co.*, 577 U.S. at 156, is *dicta*. But "[b]ecause the entire case was premised on text messaging, it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 199 (D. Mass.), *adhered to on denial of reconsideration,* 541 F. Supp. 3d 138 (D. Mass. 2021). And "nothing in Justice Ginsburg's analysis implies any hesitation or reservation over Campbell and Ewald's stipulation that text messages are calls for the purposes of the TCPA." *Id.* Additionally, "Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard. *Id.* (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2344 n.1 (2020)). And what's more, "[t]he First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than *dicta* or had already held that the TCPA included text messages before *Campbell-Ewald*." *Barton*, 525 F. Supp. 3d at 199.

5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477
aradbil@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

Steve Koval
The Koval Firm, LLC
3575 Piedmont Rd NE
15 Piedmont Center Suite 120
Atlanta, GA 30305
Steve@KovalFirm.com

*Counsel for Plaintiff and the proposed class*