# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| ETHAN RADVANSKY, on behalf of himself and those similarly situated, | Case No. 3:23-cv-00214-LMM |
| Plaintiff, | |
| v. | |
| KENDO HOLDINGS, INC., d/b/a Fenty Beauty, | |
| Defendant. | |

## DEFENDANT KENDO HOLDINGS, INC.'S REPLY IN SUPPORT OF
## <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION.................................................................................1

II.  ARGUMENT AND CITATION OF AUTHORITIES.......................................4

    A.  Section 227(c)(5) Creates a Private Right of Action for Only Unsolicited "Telephone Call[s]," Not Text Messages ...................................................5

       1.  A text message is not a "telephone call."...............................................5

       2.  Section 227(c)(5) does not create a private right of action for "telephone solicitations."...................................................................10

    B.  Cell Phone Users Are Not "Residential Telephone Subscribers"..............12

    C.  Conclusion and Potential Certification under 28 U.S.C. § 1292(b)...........15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bosley v. A Bradley Hosp. LLC*,
  2025 WL 2686984 (S.D. Fla. Sept. 19, 2025) .......................................................9

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) ....................................................................................1, 9

*Davis v. CVS Pharmacy, Inc.*,
  2025 WL 2491195 (N.D. Fla. Aug. 26, 2025).............................................*passim*

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021) ....................................................................................1, 9

*Gilbert v. United States*,
  640 F.3d 1293 (11th Cir. 2011) ...........................................................................10

*Glasser v. Hilton Grand Vacations Co., LLC*,
  948 F.3d 1301,1309 (11th Cir. 2020) ....................................................................9

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*,
  127 F.4th 303 (11th Cir. 2025) ..............................................................................1

*Isaacs v. USHealth Advisors, LLC*,
  No. 3:24-CV-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7,
  2025) ....................................................................................................3, 13, 14

*Jones v. Blackstone Med. Servs., LLC*,
  2025 WL 2042764 (C.D. Ill. July 21, 2025)...........................................................7

*Joseph v. Bd. Of Regents of the Univ. Sys. of Ga.*,
  121 F.4th 855 (11th Cir. 2024) ..................................................................4, 10, 11

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024)...........................................................................................5

*Love v. Delta Air Lines*,
  310 F.3d 1347 (11th Cir. 2002) ...........................................................................11

*Mais v. Gulf Coast Collection Bureau*,
  768 F.3d 1110 (11th Cir. 2014) ............................................................5

*McLaughlin Chir. Assocs., Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025)...............................................................3, 5, 9

*In re Micron Devices, Inc.*,
  No. 24-11215, 2025 WL 2449469 (11th Cir. Aug. 26, 2025)............................6

*Osorio v. State Farm Bank, F.S.B.*,
  746 F.3d 1242 (11th Cir. 2014) ................................................14, 15

*Parm v. Nat'l Bank of California, N.A.*,
  835 F.3d 1331 (11th Cir. 2016) .........................................................14

*Perrin v. United States*,
  444 U.S. 37 (1979).......................................................................8

*In the Matter of Rules and Regulations Implementing the TCPA*,
  7 FCC Rcd. 8752 (1992)...........................................................10, 15

*Salcedo v. Hanna*,
  936 F.3d 1162 (11th Cir. 2019) ..................................................1, 6, 7

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) .........................................................8, 9

*Touche Ross & Co. v. Redington*,
  442 U.S. 560 (1979).....................................................................11

*Turizo v. Subway Franchisee Adver. Fund Trust Ltd.*,
  603 F. Supp. 3d 1334 (S.D. Fla. 2022)........................................2, 3, 5, 13

*United States v. Chinchilla*,
  987 F.3d 1303 (11th Cir. 2021) ..........................................................8

*Wilson v. MEDVIDI Inc.*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ............................................8

*Wisconsin Cent. Ltd. v. United States*,
  585 U.S. 274 (2018)....................................................................6, 9

**Statutes**

28 U.S.C. § 1292(b) ........................................................................4, 15

47 U.S.C. § 227 ...................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(c) ........................................................................2

47 C.F.R. § 64.1200(e) ........................................................................2

2003 FCC Order ........................................................................4,14

18 FCC Rcd. 14014 ........................................................................4

Local Rule 5.1(C) ........................................................................17

## I.    INTRODUCTION[1]

Kendo's Motion presents two independent and dispositive legal questions: (i) whether a text message is a "telephone call" under 47 U.S.C. § 227(c)(5), and (ii) whether a cell phone user is a "residential telephone subscriber." Based on the TCPA's text and Eleventh Circuit case law, the answer to both questions is "no."

First, as a matter of plain English and common usage, text messages are not "telephone calls." The U.S. Supreme Court has not "held" otherwise, as Plaintiff argues; and since *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) (where the issue was undisputed) it has made clear that whether the statute applies to texts remains an open issue. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 & n.2 (2021) (the parties did not seek review of this question, so the Court "assume[d] that it does without considering or resolving that issue"). Thus, the Supreme Court has never ruled that text messages are telephone *calls*. Nor could it. Among other things, text messaging "did not exist in 1991 when the TCPA was enacted," so the statute could not have contemplated the inclusion of texts. *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019).[2] Indeed, "the statute on its face does not mention text messages." *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 307 n.2 (11th Cir.

---

[1] Kendo uses the same defined terms as its Motion. *See* DE 43 ("Mot.").

[2] The Eleventh Circuit found that "the voice call provisions of the TCPA have been extended to text messages" only by way of subsequent FCC rulemaking. *Id.* at 1169, *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1136 (11th Cir. 2023).

2025). While years after the TCPA's enactment the FCC interpreted the term "calls" to include texts (*i.e.*, in 2003), courts in recent months have rejected the FCC's interpretation. This Court should do the same.

Second, a cell phone user is not a "subscriber" of a "residential telephone" because that term as used in the TCPA—and as construed by the Eleventh Circuit—refers to a home landline, not a wireless phone. *See* Mot. at 10-12. This statutory distinction is evidenced by the FCC's enactment of a *separate regulation* under 47 C.F.R. § 64.1200(e) prohibiting calls to "wireless telephone numbers" on the DNC list. This separate regulation would be *superfluous* if calls to "wireless" users were encompassed within the meaning of "residential telephone subscriber" in 47 C.F.R. § 64.1200(c). A "straightforward" interpretation of the TCPA therefore requires reading § 227(c) as excluding calls to cell phone users. *Turizo v. Subway Franchisee Adver. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1340-41 (S.D. Fla. 2022) ("[W]hen Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers. Consequently, the protections offered to numbers on the DNC Registry . . . would not apply to cellular telephone numbers, and Plaintiff's claim would be foreclosed.").

The prior orders in this case are in accord with this view. Judge Batten concluded that the 2003 rule "changed the definition of 'residential subscriber,'" and

"[t]his alteration *expands* the private cause of action in section 227(c)." DE 28 at 14. Because the FCC lacked authority to expand private causes of action under the TCPA, the FCC's 2003 rule change was invalid. *Turizo*, 603 F. Spp. 3d at 1341 ("the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers – without any congressional grant of authority to do so."). But Judge Batten could not grant Kendo's Rule 12(b)(6) motion because pre-*McLaughlin* precedent required the Court to defer to the FCC. Thus, finding Kendo had the "stronger" arguments, Judge Batten certified his order for *en banc* review of the Eleventh Circuit's interpretation of the Hobbs Act, which barred the Court from applying the law as written. DE 28 at 8-9 n.2; DE 35 at 1. This case likely would have been dismissed a year ago but for prior precedent that *McLaughlin* has now abrogated.

Under either or both grounds, Kendo should prevail. While the Court recently considered similar arguments in *Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, it did not rule that text messages were "calls" within the meaning of 47 U.S.C. § 227(c)(5). Even if the FCC was authorized to establish a DNC registry for cell phone users, the Court did not determine whether a private remedy exists for unsolicited texts, as that issue was not presented in *Isaacs*. The explicit language of § 227(c)(5) creates a private right of action only when a person receives multiple "telephone calls," not text messages. Supreme Court and Eleventh Circuit law hold that absent "a clear indication of congressional intent to create a cause of action,

'courts may not create one, no matter how desirable [a cause of action] might be as a policy matter, or how compatible with the statute.'" *Joseph v. Bd. Of Regents of the Univ. Sys. of Ga.*, 121 F.4th 855, 865 (11th Cir. 2024) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).

Should the Court disagree with Judge Batten's prior findings or other courts on both questions presented, Kendo respectfully submits that an order denying its Motion should be certified for review under 28 U.S.C. § 1292(b). Even among courts within the Eleventh Circuit, there is substantial ground for difference of opinion on both questions. The stakes are also too high, as Kendo could face substantial penalties as Plaintiff seeks class-wide statutory damages and attorneys' fees that are not commensurate with the alleged violation—*i.e.*, texts intended for the prior subscriber who opted in to receive texts on this phone number. Moreover, the Court and the parties are best served by having this issue fully and finally resolved before spending substantial resources on class discovery and class certification briefing.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

The FCC changed the course of TCPA jurisprudence in 2003 by expanding liability on various fronts, including by interpreting (i) "call" to include texts and (ii) "residential telephone subscriber" to encompass "wireless" subscribers. 2003 FCC Order, 18 FCC Rcd. 14014. These changes largely went unchallenged for well over a decade because district courts had no choice but to defer to FCC interpretation of

the TCPA[3]—even when they disagreed, as reflected in *Turizo* and in Judge Batten's prior order. The "majority" of courts that upheld the FCC's interpretation (as quoted from a Maryland case and not what "Judge Batten wrote" as his opinion, DE 46 at 3) did so based on the "law of deference," *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2250 (2024), and not on the statutory text.

After *McLaughlin Chir. Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025), the rules have changed. As Plaintiff concedes, post *McLaughlin* "this Court must 'determine 47 U.S.C. 227(c)'s meaning under ordinary principles of statutory interpretation." DE 46 at 13. Applying those principles, this Court should hold that (1) a text message is not a "telephone call," a conclusion supported by ordinary English usage and statutory context, and (2) a "residential telephone subscriber" is a person who subscribes to a "residential telephone" service, not a cell phone service.

### A.    Section 227(c)(5) Creates a Private Right of Action for Only Unsolicited "Telephone Call[s]," Not Text Messages

#### 1.    A text message is not a "telephone call."

The Court's analysis should start and end with 47 U.S.C. § 227(c)(5), which creates a private right of action only if a person "received more than one **telephone call**" in violation of the regulations prescribed under this subsection. *Id.* (emphasis added). Statutory terms are construed "in accordance with their ordinary meaning **at**

---

[3] *See, e.g.*, *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110 (11th Cir. 2014).

**the time Congress passed the statute**." *In re Micron Devices, Inc.*, No. 24-11215, 2025 WL 2449469, at *2 (11th Cir. Aug. 26, 2025) (citations and quotations omitted); *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (courts "interpret the words [of a statute] consistent with their 'ordinary meaning . . . at the time Congress enacted the statute'"). A "call" was ordinarily understood then (as it is now) to mean an act of communicating **speech** (not written text) by telephone. Dictionaries in 1991 (*see* Exhibit A) generally define a "call" as the act of speaking by telephone, and "telephone" as a device for transmitting speech. In fact, text messaging did not exist when the TCPA was enacted. *Salcedo*, 936 F.3d at 1169. Thus, Congress could not have meant that a "telephone call" includes texts.

Even today, "telephone call[s]" are not text messages by any stretch of the English language. As Chief Judge Winsor held just weeks ago:

> The statutory text here *is* clear, and a text message is not a 'telephone call.' . . . 'No normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner. Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.

*Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025).

Like *Davis*, the U.S. District Court for the Central District of Illinois recently concluded that "based on a plain reading of the TCPA and its implementing

regulations, Section 227(c)(5) does not apply to text messages." *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *3–4 (C.D. Ill. July 21, 2025) ("'telephone call' means something entirely different from 'text message'"). Congress did not contemplate including text messages within the ambit of § 227(c)(5) because "[t]ext messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages." *Id.*

As the Eleventh Circuit observed, Congress amended the TCPA to add text messaging only to its prohibition on transmitting false caller IDs, but not to other categories of restricted telemarketing. *Salcedo*, 936 F.3d at 1169 & n. 7. That observation is confirmed by reviewing other TCPA provisions, which refer to "a call **or** text message" as distinct terms. 47 U.S.C. § 227(i)(1) (bold added). Moreover, Congress explicitly defined "text message" as excluding "a real-time, two-way voice or video communication." *Id.* § 227(e)(8)(C). "[T]ext messaging" also differs from "voice service." *Id.* § 227(e). Thus, several other TCPA provisions confirm that Congress did not intend to define "calls" as including texts.[4]

Plaintiff contends that the Court should follow the Ninth Circuit's approach

---

[4] Modern dictionaries likewise define a "call" as "the act of speaking to somebody on the phone," *i.e.*, a vocal call and not a written message. *See* https://www.oxfordlearnersdictionaries.com/us/definition/english/call_2 (last visited Oct. 16, 2025); *see also* https://www.merriam-webster.com/dictionary/call#dictionary-entry-2 (defining "call" as "the act of *speaking* to or attempting to reach someone by telephone" (italics added)).

by construing "call" to include texts, based not on the ordinary meaning of the word when the TCPA was enacted, but rather on the statute's "purpose." *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009) (construing 47 U.S.C. § 227(b)(1)(A)); DE 46 at 2. But contrary to Supreme Court and Eleventh Circuit law, *Satterfield* referenced a 2002 dictionary definition of "call," and concluded that "Congress could not have spoken clearly to this issue in 1991" because "text messaging was not available" when the TCPA was enacted. *Id.* at 954.[5] Finding "the TCPA is silent to the issue at hand," *Satterfield* deferred to the FCC's 2003 interpretation. *Id.* But congressional silence does not render a term "ambiguous" (as *Satterfield* held), where the ordinary meaning of a *telephone call* in 1991 referred to a spoken (not written) communication by phone. The Eleventh Circuit has consistently ruled that "[i]n the absence of a statutory definition of a term, we look to the common usage of words for their meaning." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (citing *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001)) (relying on "dictionaries **in existence around the time of enactment**" to construe undefined words in a statute).

Plaintiff's citation to *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *2-3

---

[5] In citing *Perrin v. United States*, 444 U.S. 37, 42 (1979) for the principle that "words [in a statute] will be interpreted as taking their ordinary, contemporary, common meaning," the Ninth Circuit in *Satterfield* omitted the Supreme Court's instruction that courts must therefore "look to the ordinary meaning of the term . . . **at the time Congress enacted the statute**." (bold added).

(N.D. Cal. Oct. 7, 2025) is equally unavailing as that court relied on an even more idiosyncratic definition of "call" from 2024, and based its decision on *Satterfield* and speculation that Congress would not have determined that "oral" calls were "more invasive or objectionable than written ones." But the TCPA does not prohibit all forms of unsolicited marketing calls, and "[i]t is not [a court's] function 'to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have' intended." *Wisconsin Central*, 585 U.S. at 282. Further, "even if [a word] is *capable* of bearing [another] meaning," that interpretation will not govern when "that was not its *ordinary* meaning." *Id*. at 280 (italics in original).[6]

Nor can new technology or marketing strategies justify changing the original meaning of words used in a statute. The Eleventh Circuit has already rejected an interpretation of the TCPA that relied on a broad reading of "the law's purpose to expand the statute[]" and "fill a legislative gap in coverage created by new communication technology[.]" *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301,1309 (11th Cir. 2020) (limiting autodialer to its 1991 meaning); *see also Wisconsin Central*, 585 U.S. at 284 ("[I]t's a judge's job only to apply, not revise or

---

[6] Cases that pre-date *McLaughlin* or engaged in no statutory analysis (such as *Bosley v. A Bradley Hosp. LLC*, 2025 WL 2686984 (S.D. Fla. Sept. 19, 2025), where there was "no dispute" over this issue) are not instructive. And as explained above, the Supreme Court has never determined whether a text message is a "call." *Davis*, 2025 WL 2491195, at *2 ("[N]either *Campbell-Ewald* nor *Facebook* includes any binding interpretation of the statutory term 'telephone call' at issue here.").

update, the terms of statutes. . . . Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law.").

A text message was not in 1991—or even now—ever considered to be a "telephone call." Stated differently, "calling a duck a donkey is not much of an argument." *Gilbert v. United States*, 640 F.3d 1293, 1320 (11th Cir. 2011).

### 2. Section 227(c)(5) does not create a private right of action for "telephone solicitations."

Plaintiff relies on other provisions to argue that the TCPA regulates "telephone solicitations," which refers to "the initiation of a telephone call or message" for certain marketing purposes. 47 U.S.C. § 227(a)(4); DE 46 at 13. But "message" in the definition of "telephone solicitation" does not mean written "text message."[7] And regardless of how Congress may define "telephone **solicitation**," "the private right of action Congress created exists only for those who received multiple 'telephone **calls**.'" *Davis*, 2025 WL 2491195, at *2 (emphasis added).

"Whether express or implied, 'private rights of action to enforce federal law must be created by Congress.'" *Joseph*, 121 F.4th at 864. Plaintiff cannot dispute

---

[7] In adopting rules for telephone solicitations, the FCC referred to "artificial or prerecorded messages" as "voice messages" or "message calls to residences." *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752 (1992).

that the operative provision is § 227(c)(5), which does not create an express private right of action for unsolicited text messages. Plaintiff instead suggests that a private remedy should be implied because "Congress's stated goal in enacting 47 U.S.C. § 227(c) was to [sic] 'to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.'" DE 46 at 14. But the Supreme Court and Eleventh Circuit hold that a statute must clearly "display[] an intent to create not just a private *right* but also a private *remedy*." *Joseph*, 121 F.4th at 864 (citing *Sandoval*, 532 U.S. at 286-87). "[E[]ven when a statute 'was intended to protect' a certain class, 'the mere fact that the statute was designed to protect [that class] does not *require* the implication of a private cause of action . . . on their behalf." *Id.* at 865 (holding that while Title IX empowers agencies to promulgate regulations that bar educational institutions from discriminating against employees on the basis of sex, it does not create an implied right of action for sex discrimination in employment). Thus, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). And "[t]he fact that Congress has expressly provided private litigants with one right of action . . . powerfully suggests that Congress did not intend to provide other private rights of action." *Love v. Delta Air Lines,* 310 F.3d 1347, 1357 (11th Cir. 2002).

Moreover, the use of "messages" in the definition of "telephone solicitations"

does not support reading "text message" into the meaning of a "telephone call"—it suggests the opposite. As explained in *Davis*:

> . . . Congress's use of the phrase "telephone call or message" in a neighboring provision . . . shows that Congress does not use the term "telephone call" to encompass all "messages." Although Davis would have me conclude Congress used the term "telephone call" in § 227(c)(5) and the term "telephone call *or message*" in § 227(a)(4) to have identical meanings, courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.

*Davis*, 2025 WL 2491195, at *2.

At bottom, Plaintiff's arguments belie § 227(c)(5)'s text, ordinary English usage, history, and statutory context. A text message is not a "telephone call," which provides an independent and sufficient ground to grant Kendo's Motion.

## B.    Cell Phone Users Are Not "Residential Telephone Subscribers"

Congress authorized the creation of the DNC Registry for "residential telephone subscribers." Principles of statutory construction confirm that cell phone users are not "residential telephone subscribers," a conclusion bolstered by surrounding statutory provisions explicitly distinguishing "residential telephones" from "cellular telephones." *See* Mot. at 9–17.

There is a split view on this question.[8] Judge Batten concluded that the FCC

---

[8] *Compare* Mot. at 16–17 *with* DE 46 at 6–7. Plaintiff criticizes undersigned counsel for not citing a recent opinion from the District of Oregon. DE 46 at 2 n.1. Counsel is unaware of any rule requiring parties to cite all out-of-circuit, non-binding authorities bearing on a legal question. Kendo has also repeatedly informed the

"changed" the statute by defining "residential subscriber" to include cell phone users, and accordingly "alter[ed]" and "expand[ed]" the private right of action in § 227(c)(5), which it lacks the authority to do. DE 28 at 14; *see also Turizo*, 603 F. Supp. 3d at 1340. After Kendo filed its Motion, this Court ruled in *Isaacs* that a cell phone user can qualify as a "residential subscriber." 2025 WL 2268359, at *4. The Court reasoned that "'residential' modifies 'subscriber,' meaning that the definition is tethered to a type of *person* rather than a type of *technology.*" *Id*. at *3. But, respectfully, "residential *telephone* subscriber" is the operative term in § 227(c) and informs each subsection.[9]

Applying traditional canons of construction shows that the phrase "residential telephone subscriber" refers to a landline and not a cell phone. Indeed, "residential" modifies "telephone," such that a "residential telephone subscriber" is one who subscribes to a "residential telephone" service. This interpretation is supported by both the preceding § 227(b)—which distinguishes a "residential telephone line" from a "cellular telephone service"—and the nearest-reasonable-referent canon. *See*

---

Court that there is a split of authority on whether a cell phone user can qualify as a "residential telephone subscriber." *See, e.g.*, DE 23 at 6.

[9] References to "residential subscribers," based on their placement and context, indicate they are a shorthand for "residential telephone subscriber." *See id*. § 227(c)(3) (referencing "residential subscribers" with "[t]he regulations required by paragraph (2)," which itself references rulemaking "under paragraph (1)," which refers to "residential *telephone* subscribers") (emphasis added). Plaintiff also focuses on the term "residential telephone subscriber." *See* DE 46 at 9, 17-18.

Mot. at 13; *see also Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331, 1336 (11th Cir. 2016) ("a prepositive or postpositive modifier normally applies only to the nearest reasonable referent"). Plaintiff offers no response to this argument and instead advances a theory that creates line-drawing problems that Congress did not intend when it categorically distinguished between "residential telephone lines" and "cellular telephone services" in the TCPA. It would be a linguistic anomaly to construe "residential telephone" differently from other provisions in the TCPA. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) (calls to a "residential telephone line," § 227(b)(1)(B), exclude calls to a "cell-phone number").

Nor is this deviation remedied by reasoning that § 227(b) addresses a type of "technology" or phone "line," while 227(c) references a type of "person." *Isaacs*, 2025 WL 2268539, at *3. Section 227(c) protects "subscribers" of a "residential telephone," and the Eleventh Circuit has consistently construed the latter to mean a home phone and not a cell phone. *See* Mot. at 10-12. Nothing in the TCPA's text or structure suggests that a call to a residential telephone *line* means something different than a call to a residential telephone *subscriber*. The FCC has even said that the terms "residential telephone subscribers" and "residential subscribers" are "synonymous," finding "no basis in the legislative language or history for considering them to be materially different." 2003 FCC Order at n.132. Further, regulations adopted in 1992 that previously exempted artificial/prerecorded calls

based on an "established business relationship" (which *Osorio* made clear only applied to residential but not to cell-phone users) defined that term as referring to a prior or existing relationship with a "residential subscriber." 7 FCC Rcd. at 8793.

Kendo respectfully submits that the Court should revisit the issue presented and construe "residential telephone subscriber" to exclude cell phone users.

### C.    Conclusion and Potential Certification under 28 U.S.C. § 1292(b)

For the foregoing reasons, Kendo's Motion should be granted. In the event it is denied, Kendo respectfully requests that the order be certified for interlocutory appeal. The Motion presents two dispositive legal questions that have generated divergent answers within the Eleventh Circuit, as evidenced by an intra-Circuit split that has formed in only the past two months. In the interest of uniform application of federal law—and to prevent the Court and the parties from using substantial resources on class discovery and class certification briefing before the issue is fully resolved—the Eleventh Circuit should be asked to resolve both questions now.[10]

Respectfully submitted this 23rd day of October, 2025.

*/s/ Lori Chang*
Steven J. Rosenwasser (SBN GA 614908)
William E. Eye (SBN GA 688914)

---

[10] Kendo's Motion presents two "controlling question[s] of law" that turn on the meaning of the TCPA; given the divergence of federal court decisions, "there is substantial ground for difference of opinion"; and because both questions are potentially and independently dispositive, "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Greenberg Traurig, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone:  678.553.2100
Facsimile:  678.553.2212
Email:        Steven.Rosenwasser@gtlaw.com
                  eyew@gtlaw.com

Lori Chang (SBN CA 228142) (*pro hac vice*)
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone:  310.586.7700
Facsimile:  310.586.7800
Email:        changl@gtlaw.com

*Attorneys for Defendant Kendo Holdings, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Counsel hereby certifies that the text of this document has been prepared with Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Lori Chang*
Lori Chang

## **CERTIFICATE OF SERVICE**

This is to certify that on October 23, 2025, I electronically filed the foregoing DEFENDANT KENDO HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS with the CM/ECF efiling system, which will automatically send email notification of such filing to attorneys of record.

This 23rd day of October, 2025.

*/s/ Lori Chang*

Lori Chang